Laurence M. Rosen, Esq. (SBN 219683)
THE ROSEN LAW FIRM, P.A.
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff West

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY WEST, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,<br><br>Plaintiff,<br>vs.<br><br>EHEALTH, INC., GARY L. LAUER AND STUART M. HUIZINGA,<br><br>Defendants. | CASE No.:<br><br>CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>JURY TRIAL DEMANDED |

Plaintiff Jeffrey West, individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's Complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based on the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of Securities and Exchange Commission ("SEC") filings by eHealth, Inc. ("eHealth" or the "Company"), as

1

well as media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all purchasers of eHealth common stock between October 31, 2014 and January 14, 2015, inclusive (the "Class Period"). Plaintiff seeks to pursue remedies against eHealth and its most senior executives under §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.

## JURISDICTION AND VENUE

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b), 78b-1 and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

3.      This Court has jurisdiction over the subject matter of this action pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331.

4.      Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b) as a substantial part of the conduct complained of herein occurred and Defendant eHealth conducts business in this District.

5.      In connection with the acts alleged in this Complaint, Defendants,

directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications and the facilities of the national securities markets.

## PARTIES

6.     Plaintiff Jeffrey West, as set forth in the accompanying certification incorporated by reference herein, purchased securities of eHealth during the Class Period and has been damaged thereby.

7.     Defendant eHealth is organized under the laws of the Delaware and headquartered in Mountain View, California. The Company's common stock is listed on NASDAQ, an efficient market, under the ticker symbol "EHTH".

8.     Defendant Gary L. Lauer ("Lauer") is, and was throughout the Class Period, eHealth's Chief Executive Officer ("CEO") and Chairman of the Board of Directors.

9.     Defendant Stuart M. Huizinga ("Huizinga") is, and was throughout the Class Period, eHealth's Chief Financial Officer ("CFO").

10.     The Defendants Lauer and Huizinga are collectively are referred to herein as the "Individual Defendants." eHealth and the Individual Defendants are referred to herein, collectively, as "Defendants."

## CLASS ACTION ALLEGATIONS

11.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all purchasers of

eHealth's common stock during the Class Period (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

12.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, eHealth securities and other publicly-traded securities were actively traded on NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds of thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by eHealth or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

13.     Plaintiff's claims are typical of the claims of the members of the Class as all members Of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

14.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

15.     Common questions of law and fact exist as to all members of the Class

and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants as alleged herein;

(b)     whether statements made by Defendants misrepresented material facts about the business, operations and management of eHealth;

(c)     whether omissions made by Defendants misrepresented material facts about the business, operations and management of eHealth; and

(d)     to what extent the members of the Class have sustained damages and the proper measure of damages.

16.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## **SUBSTANTIVE ALLEGATIONS**

### **Background**

17.     eHealth is an online marketplace for health insurance for individuals, families, and small businesses throughout the United States. Through its websites, consumers can get quotes from health insurance carriers, compare health insurance

plans side-by-side, and apply and purchase individual and family plans ("IFP"), Medicare plans, small business plans, and ancillary plans.

18.   eHealth owns and operates the websites www.ehealth.com, www.eHealthInsurance.com, www.eHealthMedicare.com, www.Medicare.com and www.PlanPrescriber.com.

19.   During the Class Period, the open enrollment for Medicare plans took place from October 15, 2014 to December 7, 2014.

20.   The enrollment period for IFPs commenced on November 15, 2014 and ends on February 15, 2015.

21.   Defendants were aware of the seasonal nature of health insurance enrollment periods and how they correlate to revenues, as well as the downward trend in the application volume of IFP. From at least the beginning of the Class Period, Defendants were aware and publically stated, that the IFP health insurance enrollment period straddled the fourth quarter 2014 and the first quarter 2015. Due to this overlap and the fact that many people put off applying and enrolling in health insurance closer to the deadline, Defendants were aware that revenues for the open enrollment period tended to be in the first quarter of the following year as opposed to the fourth quarter of the current year.

22.   After close of business on July 30, 2014, eHealth issued a press release entitled "eHealth, Inc. Announces Second Quarter 2014 Results." The press release included guidance on 2014. It states in relevant part:

**2014 Guidance**

eHealth is revising guidance for the full year ending December 31, 2014 based on information available as of July 30, 2014. These expectations are forward-looking statements and eHealth assumes no obligation to update these statements. Results may be materially different and are affected by the risk factors and uncertainties identified in this release and in eHealth's annual and quarterly filings with the Securities and Exchange Commission.

- **Total revenue is expected to be in the range of $185 million to $194 million,** compared to previous guidance of $206 million to $213 million
- Stock-based compensation expense is expected to be in the range of $8.0 million to $9.5 million, compared to previous guidance of $8.5 million to $10.5 million
- **EBITDA\* is expected to be in the range of $13.5 million to $18.5 million**, compared to previous guidance of $18.0 million to $22.5 million
- **Non-GAAP net income per diluted share\*\* is expected to be in the range of $0.30 to $0.43 per share**, compared to previous guidance of $0.43 to $0.51 per share

23.     That same evening the Company held a conference call to discuss the Company's financial results for the second quarter of 2014. During this conference call, Defendant Lauer discussed the decrease in the volume of applications for IFPs, stating in relevant part:

- **"While Individual and Family health insurance application volumes declined**, we generated significant demand for short-term health insurance products[.]"

(emphasis added).

24.     During this conference call, Defendant Huizing also discussed lower application volume of IFPs as well as confirmed the 2014 guidance which was

specified in the press release, stating in relevant part:

- **"Our Individual & Family major medical plans submitted application volume was down 78% compared to the second quarter of 2013**."

- "As you know, our first quarter Individual & Family Plan application volume was back-end loaded with the majority of applications submitted in the last month of the quarter and a significant portion of that submitted in the last 2 weeks."

- **"A decline in the Individual and Family Plans submitted application volume during the second quarter** drove a decline in Individual & Family Plan-related marketing spend."

- **"While Individual & Family Plan application volumes and related marketing spend are expected to remain soft in Q3**, we're starting to ramp our Medicare spend in preparation for the annual enrollment period, which starts on October 15."

- "With respect to guidance and based on information currently available, we are updating our guidance for the full year of 2014 as follows: **total revenue is expected to be in the range of $185 million to $194 million; stock-based compensation expense is expected to be in the range of $8 million to $9.5 million; EBITDA is expected to be in the range of $13.5 million to $18.5 million; and non-GAAP net income per diluted share is expected to be in the range of $0.30 to $0.43 per share."**

(emphasis added).

## **Defendants' False and Misleading Class Period Statements**

25. The Class Period begins on October 31, 2014, the first trading day, after eHealth issued a press release, "eHealth, Inc. Announces Third Quarter 2014 Results," announcing its financial results for the third quarter of 2014 and guidance

for the fourth quarter and full year of 2014. The press release states, in relevant part:

> **2014 Guidance**
>
> **eHealth is reaffirming guidance for the full year ending December 31, 2014 based on information available as of October 30, 2014.** These expectations are forward-looking statements and eHealth assumes no obligation to update these statements. Results may be materially different and are affected by the risk factors and uncertainties identified in this release and in eHealth's annual and quarterly filings with the Securities and Exchange Commission.
>
> - **Total revenue is expected to be in the range of $185 million to $194 million**
> - **Stock-based compensation expense is expected to be in the range of $8.0 million to $9.5 million**
> - **EBITDA\* is expected to be in the range of $13.5 million to $18.5 million**
> - **Non-GAAP net income per diluted share\*\* is expected to be in the range of $0.30 to $0.43 per share**

(emphasis added).

26.   On the same day, the Company held a conference call to discuss the financial results for the third quarter of 2014. During this conference call, Defendant Huizinga reiterated the Company's revenue guidance for the fourth quarter of 2014 and discussed the expectations for the IFPs volume, stating in relevant part:

> - "**Third quarter Individual & Family Plan commission revenues were down 14%** compared to the third quarter of 2013 due primarily to **a decline in the estimated number of revenue-generating Individual & Family Plan members over the same time period.**"

- "As expected, during the third quarter, **the volume of our new IFP applications was very low at 23,800, down 81% from the third quarter of 2013**."

- "**We didn't have the same application inflow in the second and third quarters of 2014** as we had in prior years."

- "At the same time, during the quarter, **we continued to experience churn in our member base, which is similar to what we observed in the second quarter of this year. The number of new approved members that we added during the quarter was not enough to offset this churn, as I just described, leading to a sequential and annual decline in revenue-generating Individual & Family Plan members.**"

- "I'd like to note that **since the majority of open enrollment applications are for 2015 coverage, we will likely see minimal impact from applications submitted during Q4 and a number of fourth quarter revenue-generating members.**"

- "**The majority of individuals who submit applications during the fourth quarter are expected to start flowing through our membership numbers in the first quarter of 2015 once we receive first commission payments on these policies**."

- "Finally, **because the open enrollment period runs from November 15 to February 15, it spans 2 quarters, making it somewhat difficult to predict how much of the application demand will be generated in the fourth and first quarters**, respectively."

- "Most -- **the vast majority of the Q4 applicants are going to start contributing in 2015**. They will be applying for 2015 coverage. **The revenue won't start flowing, so it really doesn't impact this year's guidance**."

(emphasis added).

27.    The true facts, which were known by Defendants but concealed from

the investing public during the Class Period, were unrealistic expectations of meeting 2014 guidance due to the reduction in the volume of applications the Company received. Defendants knew that this had a negative effect on revenue but continued to tell the investing public that the Company would meet the 2014 guidance.

28.    As a result of the foregoing, Defendants had led the market to expect certain expectations that were unreasonable during the Class Period.

### The Truth Emerges

29.    On January 14, 2015, the Company issued a press release entitled "eHealth, Inc. Announces Preliminary Results for the Fourth Quarter and Fiscal Year 2014; Conference Call to Be Held January 15, 2015 at 9:00 a.m. ET," which lowered its revenue guidance for the fiscal year 2014 and fourth quarter of 2014. It states in relevant part:

> MOUNTAIN VIEW, CA--(Marketwired - January 14, 2015) - eHealth, Inc. (NASDAQ: EHTH)
>
> - **Revenue for the fiscal year of 2014 is expected to be in the range of $178 to $180 million.**
> - **Non-GAAP net loss per diluted share\* for the fiscal year of 2014 is expected to be in the range of $(0.13) to $(0.04).**
> - **Fourth quarter 2014 submitted applications for Medicare Advantage and Medicare Supplement products combined of approximately 48,700 representing 46% year-over-year growth.**
> - **Fourth quarter 2014 submitted applications for Individual & Family Plan product of approximately 100,000 representing a 41% year-over-year decline.**

eHealth, Inc. (NASDAQ: EHTH), the nation's first and largest private health insurance exchange, today announced preliminary financial results for the fourth quarter and fiscal year ended December 31, 2014.

**Revenue for the fiscal year 2014 is expected to be in the range of $178 million to $180 million, compared to the company's guidance of $185 million to $194 million. EBITDA\* for the year is expected to be in the range of $1.5 million to $4.0 million, compared to guidance of $13.5 million to $18.5 million. Non-GAAP net loss per diluted share\* for the fiscal year 2014 is expected to be in the range of $(0.13) to $(0.04), compared to guidance of non-GAAP net income of $0.30 to $0.43 per diluted share.**

Revenue for the fourth quarter of 2014 is expected to be in the range of $43 million to $45 million. EBITDA\* for the fourth quarter of 2014 is expected to be in the range of $(16.3) million to $(13.8) million. Fourth quarter 2014 non-GAAP net loss per diluted share\* is expected to be in the range of $(0.56) to $(0.47).

Gary Lauer, chief executive officer of eHealth, stated, "During the fourth quarter, we completed a successful Medicare Annual Enrollment Period generating Medicare application growth above our expectations. As a result we spent considerably more on Medicare marketing during the fourth quarter than we planned. In our Individual & Family Plan (IFP) business we are currently in the middle of the 2015 Open Enrollment Period. **Our fourth quarter submitted IFP applications fell short of our expectations,** and notably we had half the number of selling days under the Open Enrollment in the fourth quarter of 2014 compared to a year ago. **Because we've historically experienced consumer demand in our market increase around major application deadlines, we expect to see strong IFP application volumes during the second half of this Open Enrollment Period and especially in the first two weeks of February just before it ends on February 15th."**

Fourth quarter 2014 submitted applications for Medicare Advantage and Medicare Supplement products combined grew 46% to approximately 48,700 applications, compared to approximately 33,400 applications in the fourth quarter of 2013. The number of

submitted applications for all Medicare products which also includes Prescription Drug Plans, grew 22% to approximately 64,800 applications, compared to approximately 53,000 applications in the fourth quarter of 2013.

**Fourth quarter 2014 submitted applications for IFP products declined approximately 41% to 100,000 applications covering over 150,000 individuals.**

Stuart Huizinga, chief financial officer of eHealth, commented on the fourth quarter preliminary financial results, "**Fourth quarter revenues and earnings were impacted by a shortfall in our Individual & Family Plan sponsorship and advertising and other ancillary revenues driven by lower than expected IFP application volumes** and by the timing of several million dollars of Medicare revenues which were pushed out into the first quarter of 2015. In addition, fourth quarter earnings were impacted by the fact that we spent considerably more than we planned on Medicare marketing costs due primarily to stronger than expected application growth in our Medicare business. We will provide more detail on the preliminary fourth quarter results during tomorrow's conference call."

These preliminary, unaudited results are based on management's initial review of operations for the quarter ended December 31, 2014, and remain subject to change based on management's ongoing review of the fourth-quarter results. The company will report final results for the fourth quarter and fiscal year 2014 in its regularly scheduled earnings release and conference call.

* EBITDA is calculated by adding stock-based compensation expense, depreciation and amortization expense, including intangible asset amortization expense, other (income) expense, net and provision for income taxes to GAAP net income (loss). Non-GAAP net income (loss) per diluted share is calculated by excluding intangible asset amortization expense, stock-based compensation expense and the estimated tax benefit related to these items.

(emphasis added).

30.    The same day, the Company held a conference call to discuss the

fourth quarter 2014 results. During this conference call, Defendant Lauer discussed

the projected earnings for the fourth quarter of 2014 and discussed the problem with

IFPs, stating in relevant part:

- "During the fourth quarter of 2014, we saw over 150,000 individuals applying for health insurance on roughly 100,000 Individual & Family Plan submitted applications. Over 25% of these submitted applications were for qualified health plans. **These submission volumes were less than we anticipated**."

- "[W]e are optimistic about our potential Individual & Family Plan application volume during the weeks leading up to the last day of the Open Enrollment Period, which is February 15th. This could also translate into strong first quarter application volumes considering that the final weeks of the last Open Enrollment Period, that ended on March 31, 2014, accounted for a very significant portion of our total Individual & Family Plan application volume in the first quarter last year."

    (emphasis added)

31.     On the same call conference call, Defendant Huizinga stated:

- "**Lower than expected Individual & Family Plan applications also put pressure on our fourth quarter revenues.** While applications generated in a given quarter typically have limited impact on broker commissions in that same quarter, they do impact other volume based revenues, including sponsorship and advertising and other ancillary revenue."

32.     On the news of the Company missing guidance and the reduction of volume of IFPs, shares of eHealth fell $11.38 per share or almost 55% from its previous closing price to close at $9.42 per share on January 14, 2015, damaging investors.

## ADDITIONAL SCIENTER ALLEGATIONS

33.    As alleged herein, eHealth and the Individual Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, these Defendants, by virtue of their receipt of information reflecting the true facts regarding eHealth, their control over, and/or receipt and/or modification of eHealth's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning eHealth, participated in the fraudulent scheme alleged herein.

## NO SAFE HARBOR

34.    eHealth's "Safe Harbor" warnings accompanying its reportedly forward looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability. To the extent that projected revenues and earnings were included in the Company's financial reports prepared in accordance with GAAP, including those filed with the SEC on Form 8-K, they are excluded from the protection of the statutory Safe Harbor. *See* 15 U.S.C. §78u-5(b)(2)(A).

35.    Defendants are also liable for any false or misleading FLS pleaded

because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of eHealth who knew that the FLS was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

## APPLICATION OF PRESUMPTION OF RELIANCE:<br>FRAUD ON THE MARKET

36.     Plaintiff will rely upon the presumption of reliance established by the fraud on the market doctrine in that, among other things:

(a)     Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

(a)     The omissions and misrepresentations were material;

(b)     The Company's securities traded in an efficient market;

(c)     The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

(d)     Plaintiff and other members of the Class purchased eHealth securities between the time Defendants misrepresented or failed to disclose material

facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

37.    At all relevant times, the market for eHealth securities was efficient for the following reasons, among others:

(a)    As a regulated issuer, eHealth filed periodic public reports with the SEC;

(b)    eHealth regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

(c)    eHealth was followed by several securities analysts employed by a major brokerage firms who wrote reports that were distributed to the sales force and certain customers of his/her brokerage firm during the Class Period. Each of these reports were publicly available and entered the public marketplace;

(d)    Numerous FINRA member firms were active market-makers in eHealth stock at all times during the Class Period; and

(e)    Unexpected material news about eHealth was rapidly reflected and incorporated into the Company's stock price during the Class Period.

38.    As a result of the foregoing, the market for eHealth's common stock promptly digested current information regarding eHealth from all publicly available

sources and reflected such information eHealth's stock price. Under these circumstances, all purchasers of eHealth's common stock during the Class Period suffered similar injury through their purchase of eHealth's common stock at artificially inflated prices, and a presumption of reliance applies.

## APPLICABILITY OF PRESUMPTION OF RELIANCE: AFFILIATED UTE

39.     Neither plaintiffs nor the Class (defined herein) need prove reliance – either individually or as a class – because under the circumstances of this case, which involve omissions of material fact as described above, positive proof of reliance is not a prerequisite to recovery, pursuant to the ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 1456, 31 L. Ed. 2d 741 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

## LOSS CAUSATION/ECONOMIC LOSS

40.     The market for eHealth securities was open, well-developed and efficient at all relevant times. As a result of these materially false and misleading statements and omissions as set forth above, eHealth securities traded at artificially inflated prices during the Class Period Plaintiff and other members of the Class purchased or otherwise acquired eHealth securities relying upon the integrity of the

market price of eHealth securities and market information relating to eHealth, and have been damaged thereby.

41.     During the Class Period, as detailed herein, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of eHealth securities and operated as a fraud or deceit on Class Period purchasers of eHealth securities by misrepresenting the value of the Company's business and prospects. As Defendants' misrepresentations and fraudulent conduct became apparent to the market, the price of eHealth securities fell precipitously, as the prior artificial inflation came out of the price. As a result of their purchases of eHealth securities during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.,* damages, under the federal securities laws.

42.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused, or were a substantial contributing cause of, the damages sustained by Plaintiff and other members of the Class. As described herein, during the Class Period, Defendants made or caused to be made a series of materially false or misleading statements about eHealth's business and operations. These material misstatements and omissions had the cause and effect of creating, in the market, an unrealistically positive assessment of eHealth and its business and operations, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.

Defendants' materially false and misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing eHealth securities at artificially inflated prices, thus causing the damages complained of herein. When the true facts about the Company were revealed to the market, the inflation in the price of eHealth securities was removed and the price of eHealth securities declined dramatically, causing losses to Plaintiff and the other members of the Class.

## FIRST CLAIM
### Violation of Section 10(b) of
### The Exchange Act and Rule 10b-5
### Promulgated Thereunder Against All Defendants

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     During the Class Period, Defendants disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

45.     Defendants violated §10(b) of the Exchange Act and Rule 10b-5 in that they: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that

operated as a fraud or deceit upon Plaintiff and others similarly situated in connection with their purchases of eHealth securities during the Class Period.

46.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for eHealth securities. Plaintiff and the Class would not have purchased eHealth securities at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' misleading statements.

## SECOND CLAIM
## Violation of Section 20(a) of The Exchange Act
## Against the Individual Defendants

47.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

48.     The Individual Defendants acted as controlling persons of eHealth within the meaning of §20(a) of the Exchange Act. By reason of their positions with the Company, and their ownership of eHealth securities, the Individual Defendants had the power and authority to cause eHealth to engage in the wrongful conduct complained of herein. eHealth controlled the Individual Defendants and all of the Company's employees. By reason of such conduct, Defendants are liable pursuant to §20(a) of the Exchange Act.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.      Determining that this action is a proper class action, designating Plaintiff as Lead Plaintiff and certifying plaintiff as Class representative under Rule 23 of the Federal Rules of Civil Procedure and Plaintiffs counsel as Lead Counsel;

B.      Awarding compensatory damages in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees;

D.      Awarding rescission or a rescissory measure of damages; and

E.      Awarding such equitable/injunctive or other relief as deemed appropriate by the Court.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: January 26, 2015                Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

/s/ Laurence Rosen
Laurence M. Rosen, Esq. (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Counsel for Plaintiff West

Class Action Complaint for Violation of the Federal Securities Laws

# Certification and Authorization of Named Plaintiff Pursuant to Federal Securities Laws

The individual or institution listed below (the "Plaintiff") authorizes and, upon execution of the accompanying retainer agreement by The Rosen Law Firm P.A., retains The Rosen Law Firm P.A. to file an action under the federal securities laws to recover damages and to seek other relief against eHealth, Inc.. The Rosen Law Firm P.A. will prosecute the action on a contingent fee basis and will advance all costs and expenses. The eHealth, Inc.. Retention Agreement provided to the Plaintiff is incorporated by reference, upon execution by The Rosen Law Firm P.A.

**First name:**        Jeffrey
**Middle initial:**    B
**Last name:**         West
**Address:**
**City:**
**State:**
**Zip:**
**Country:**
**Facsimile:**
**Phone:**
**Email:**

REDACTED

Plaintiff certifies that:

1. Plaintiff has reviewed the complaint and authorized its filing.

2. Plaintiff did not acquire the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in this private action or any other litigation under the federal securities laws.

3. Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4. Plaintiff represents and warrants that he/she/it is fully authorized to enter into and execute this certification.

5. Plaintiff will not accept any payment for serving as a representative party on behalf of the class beyond the Plaintiff's pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the court.

6. Plaintiff has made no transaction(s) during the Class Period in the debt or equity securities that are the subject of this action except those set forth below:

Acquisitions:

| Type of Security | Buy Date | # of Shares | Price per Share |
|---|---|---|---|
| Common Stock | 11/19/2014 | 2000 | 23.43 |

7. I have not served as a representative party on behalf of a class under the federal security laws during the last three years, except if detailed below. [ ]

I declare under penalty of perjury, under the laws of the United States, that the information entered is accurate:          **YES**

**Certification for Jeffrey West (cont.)**

By clicking on the button below, I intend to sign and execute
this agreement and retain the Rosen Law Firm, P.A. to
proceed on Plaintiff's behalf, on a contingent fee basis.　　　**YES**

Signed pursuant to California Civil Code Section 1633.1, et seq. - and the Uniform Electronic
Transactions Act as adopted by the various states and territories of the United States.

Date of signing: 01/16/2015

